WILSON, COLSTON & CO. v. THE CITY OF CHARLOTTE.

*Contract—Guaranty—Counter claim.*

Plaintiffs contracted with a municipal corporation to construct water-works and to furnish the corporation with an adequate supply of water for all fire, sanitary and other public purposes for which the corporation agreed to pay a fixed rent; it was stipulated in the same clause that upon a failure to furnish such supply the corporation should pay no rent. In another clause of the contract plaintiffs guaranteed to furnish a force or pressure sufficient to throw from any fire hydrants, at same time, five streams of water seventy-five feet high. Plaintiffs complied with the conditions first named, but not with the last, and thereupon the city refused to pay rent: *Held*, (1) that the clauses were distinct in their purpose and effect, and that the corporation had no right to refuse payment of rent for the breach of the guaranty in respect to the pressure necessary to throw the water seventy-five feet; (2) that for any breach of said guaranty the corporation had a remedy which might by proper pleading be set up as defence to an action for recovery of rents.

CIVIL ACTION, tried before *Philips, J.*, at February Term, 1890, of MECKLENBURG Superior Court.

It appears that certain contractors entered into an agreement on the 17th· day of March, 1881, with the defendant, the city of Charlotte, that they would "erect and establish in or near" that city "a system of water-works, with all necessary mains, pipes, hydrants, fixtures and appurtenances

of every kind to supply said city with pure and wholesome water, fit for domestic purposes and sufficient for all purposes" specified, the same "to be of the best material and constructed in workman-like manner," etc. Afterwards, the Charlotte City Water-works Company was incorporated and organized, and, as it might do, with the consent of the defendant, it assumed and became party in place of the said contractors to the said agreement.

It is alleged in the complaint that the said Water-works Company established and completed such a system of water-works, and "furnished defendant with water from 1st of July, 1887, to 31st of December, 1887, as provided in said contract, and, in all other respects, performed its part of said contract with defendant"; and that it, during the time specified, supplied "all water necessary for fire, sanitary and other public purposes; that, as rental for the use of the eighty-eight hydrants aforesaid for said six months, the defendant became and was, under and by virtue of said contract, indebted to said Water-works Company in the sum of $2,200"; that afterwards,. "on the 25th of February, 1888, the said Water-works Company, for value, duly assigned to these plaintiffs their said claim, and demand cause of action therefor against the defendant"; that plaintiffs made demand for payment of the defendant, which was refused, etc.

It is admitted in the answer that water-works were erected, "but the defendant denies that, from July 1st, 1887, to December 31st, 1887, the Water-works Company furnished necessary water for fire, sanitary and other public purposes, as stipulated in said contract." It admits the agreement and the alleged demand, but denies other material allegations of the complaint. It denies that the said company kept and performed its part of the said agreement during the time specified, or at all, and alleges that, by its failure to do so, the defendant, at and next before the time of the alleged assignment of claim to the plaintiffs, was greatly endamaged,

to the amount of $5,000; that it owed defendant that sum, and pleads the same as a set-off, etc.   It is further alleged that the said company did not, at any time, "furnish a sufficient force or pressure to throw from any five of said fire hydrants at one and the same time, through one-inch nozzles and fifty feet of two-and-a-half-inch hose, five streams of water to the height of seventy-five feet, and, in fact, the works were so negligently constructed that the force or pressure so guaranteed in section 7 of the contract could not, at any time or under any circumstances, be furnished."

The agreement mentioned contained, among others, the following clauses:

" 6.  That if the said contractors shall fail at any time after the said water-works are completed to furnish an adequate supply of water for all fire, sanitary and other public purposes, as herein stipulated, excepting by reason of accidents or injury to machinery and making necessary repairs, no rent shall be paid by the City of Charlotte during the time of such failure.   And if they shall, at any time, for a period of three months continuously fail to give an adequate supply of water for all the purposes herein enumerated, then this contract shall cease and be at an end.

" 7.  That they guarantee at all times to furnish, if required, one hundred gallons of water, *per day* of twenty-four hours, for each inhabitant of the city of Charlotte, and a sufficient force or pressure to throw from any five of said fire hydrants at one and the same time through one-inch nozzles and fifty feet of two-and-a-half-inch hose five streams of water to the height of seventy-five feet."

Appropriate issues, raised by the pleadings, were submitted to the jury.

On the trial, the plaintiffs produced evidence tending to prove the material allegations of the complaint, except that their own witness testified that the water-works did not, and could not, throw water to the height of seventy-five feet, as

it contracted to do in the seventh paragraph set forth above of the said agreement.

The principal witness of the plaintiffs, among other things, testified that—

"The city used the water-works for two or three weeks prior to 1st July, 1882; it paid rent from the 1st July, 1882, to 1st July, 1887, in quarterly installments. It used the water-works from the 1st July, 1887, to the 1st January, 1888, for all purposes, and just as it had before. The water supply and service was much better the last half of the year 1887 than in July, 1882. We had improved the works, giving much greater pressure. The Water-Works Company complied with its contract in all respects, except that the company never was able from 1882 to 1888 to furnish a sufficient force or pressure to throw from any five of its fire hydrants at one and the same time through one-inch nozzles and fifty feet of two-and-one-half-inch hose five streams of water to the height of seventy-five feet, as provided by the seventh clause or section of the contract.

"The company furnished to the city from 1st July, 1887, to the 1st January, 1888, a sufficient supply for all practical public purposes, and this service was reasonably worth twenty-two hundred dollars for that period. I am acquainted with the service rendered by water-works companies in other cities, and that in Charlotte is superior to most of them.

"In November, 1887, experts examined the works at the instance of the plaintiff, and they reported that the works were sufficient for the city for all its present purposes, but that if the city required the five streams seventy-five feet at the same time, as provided in the seventh clause of the contract, then alterations and additions would have to be made, as the present works were inadequate for that purpose; that the company could not comply with this provision of the contract with its four-inch mains. About the 25th of September, 1887, two tests were made at my instance and under

my supervision, to see if the five streams could be thrown from five hydrants under conditions named in the seventh clause of the contract. We failed both times. The pipes could not stand the pressure."

The Court expressed the opinion that in no aspect of the evidence could the plaintiffs recover Thereupon, they submitted to a judgment of nonsuit and appealed.

*Mr. C. W. Tillett*, for plaintiffs.
*Mr. P. D. Walker*, for defendant.

MERRIMON, C. J.—after stating the case: The defendant, insisting that The Charlotte City Water-works Company mentioned had failed to supply the city with water, as by its contract it was bound to do, suspended the further payment of rent claimed by that company to be due to it to the amount of twenty-two hundred dollars. The company claimed that it had in all material respects complied with its contract, and that the sum of money mentioned was due to it. It sold its claim for such rent to the plaintiffs, and they demand judgment in this action for the amount so alleged to be due.

It is not questioned that the plaintiffs allege a cause of action, and there was evidence produced on the trial tending to prove the material allegations of the complaint except in a single respect, and as to this the plaintiffs insist that it was not material in this action and could not affect adversely their right to recover. If this is true, there is error, because, although the evidence was in some respects conflicting, still if it had been submitted to the jury they might have believed so much of it as was favorable to the plaintiffs to be true, and rendered a verdict in their favor. For the purpose of the assignment of error, the evidence must be accepted as true. The Court, in effect, expressed the opinion that, taking

the evidence as true in its most favorable aspect for the plaintiffs, they could not recover.

The plaintiffs' alleged cause of action must be treated just as if the water-works company was the present plaintiff and suing upon the same; they bought it in the same plight and condition as when the company owned and sold it to them, and subject to the rights of defendant under the agreement. The latter provides in the sixth paragraph thereof, among other things, that if the company named "shall fail at any time after the said water-works are completed to furnish an adequate supply of water for all fire, sanitary and other public purposes as herein stipulated, excepting by reason of accidents or injury to machinery and making necessary repairs, no rent shall be paid by the city of Charlotte during the time of such failure." The seventh paragraph further provides, among other things, that the company "guarantee at all times to furnish, if required * * * a sufficient force or pressure to throw from any five of said fire hydrants at one and the same time through one-inch nozzles and fifty feet of two-and-a-half-inch hose, five streams of water to the height of seventy-five feet." The evidence went to prove that the company complied with the agreement, and that the water supply was sufficient in all respects except that the "force or pressure" was not sufficient at any time to throw the water as specified to the height of seventy-five feet. The defendant, then, had no right to suspend the payment of rent as it did do, unless the failure of the machinery to throw the water to the height of seventy-five feet came within the meaning and purpose of the sixth paragraph of the agreement just recited as to the failure in the supply of water and the stipulation that no rent shall be paid during such failure. It is to be observed that this sixth paragraph has special reference to an "adequate supply of water for all fire, sanitary and other public purposes as herein (therein) stipulated," and taken in connection with provisions

of the first paragraph, to have like reference to a supply of "pure and wholesome water fit for domestic purposes, and sufficient for all purposes hereinafter (thereinafter) stipulated for." It contemplates such an adequate supply of water as the parties to the agreement at the time it was executed deemed and intended to secure as continually necessary for the good of the city. The provision that no rent should be paid during the time of failure to make such supply of water was intended as a means the more effectually to secure the same

The seventh paragraph of the agreement contemplates and intends a larger supply of water at all times—equal to the quantity therein specified, and that the water-works machinery shall have capacity to throw the quantity of water specified to the height of seventy-five feet, if the appropriate city authorities should so require. This provision was cautionary. It was agreed that the city authorities might afterwards avail themselves of it, if, upon reflection or experience, they should determine that the greater good of the city and its inhabitants so required. It was not at first deemed necessary to so require. To provide for an adequate supply of water was then supposed to be sufficient, and the main leading purpose was to secure that as thoroughly as practicable. The seventh paragraph was inserted in the agreement with the view to enlarged advantages to the defendant. It contained a distinct, particular and express guaranty, showing the intent of the parties to make this part of the agreement separate from the provisions of the sixth paragraph, and the purpose of the defendant to rely upon the guaranty as sufficient of itself. It did not deem it neces-sary to provide that the payment of rent should be suspended if the Water-works Company should fail to throw the water seventy-five feet high, as required. As to that, it required a special guaranty of the company that it would do so, and, in case of failure, it was content to rely upon its remedy for a

breach of the guaranty. Else, wherefore the special guaranty? And why was the suspension of payment, as provided in the sixth paragraph, confined to a failure "to furnish an adequate supply of water for all fire, sanitary and other public purposes"? The seventh paragraph was exceptional, and intended to secure a particular and specified purpose, if the defendant should so require. Considering the nature of the matter apart from the terms and the relations of the several parts of the agreement, it is not at all probable that the parties intended that the payment of rent should be suspended if the supply of water was adequate and the force or pressure was not sufficient to throw the water to the height of seventy-five feet. It is much more probable that it was intended that the defendant should rely upon its remedy by action in that case.

The plaintiffs contended that the defendant never required the observance of the seventh paragraph, but if it be granted that, as it contends, it did, this was of itself not sufficient cause for suspending the payment of the rent.

As to a breach of the guaranty, the defendant can have its remedy. Indeed, it seems to seek the same in this action by asking affirmative relief. We are, therefore, of opinion that there is error. The judgment of nonsuit must be reversed and the action disposd of according to law. To that end, let this opinion be certified to the Superior Court.

Error.