J. G. WILSON et al. v. THE CITY OF CHARLOTTE.

*Contract—Notice—Water Supply.*

Where a section in a contract with a water company sets out that it should furnish water in the manner there specified, "when required": *Held*, (1) that the terms of such requirement should be clear and explicit; (2) merely stating to the company's officer that "it should bring its water up to the requirements of the contract, so as to throw water on fires," is too vague, no reference being made to the section making the specification, or to its other provisions.

110 — 29

This was a CIVIL ACTION, tried by *Hoke, J.*, at the August Term, 1891, of MECKLENBURG Superior Court, for rent alleged to be originally due to waterworks company from July 1st, 1887, to December 31st, 1887, and assigned for value to the plaintiffs.

The city paid rent for water supply up to July 1st, 1887. The only sections of the contract necessary to be set out here are the first, second, third, sixth and seventh, which are as follows:

1. "That they will erect and establish in or near the city of Charlotte, N. C., a system of waterworks, with all proper and necessary mains, pipes, hydrants, fixtures and appurtenances of every kind to supply said city with pure and wholesome water, fit for domestic purposes, and sufficient for all purposes hereinafter stipulated for; to be made of the best material and constructed in workmanlike manner. The work shall be commenced within sixty days after the execution of this agreement, and shall be completed within eight months thereafter; but if the work has made reasonable progress they shall have reasonable time to complete the same, in no event to exceed twelve months. And it is further stipulated, that if the contractors shall at any time be restrained from working, or be delayed therein, by any injunction, or other legal process, or by ordinance of the city, the time during which they may be so delayed or restrained shall not be counted in estimating said time.

2 That they will erect and establish forty fire hydrants; that is, twenty-five double and fifteen single hydrants, with sixty-five hose openings, at points not more than five hundred feet apart, along their street mains, and to furnish at said hydrants all water necessary for all fires, sanitary and other public purposes. The city of Charlotte shall have the right to select the streets along which the mains are to be laid, and the places said hydrants shall be established along the line of said mains, within the limits prescribed.

3. That they will, at any time, when so required by the proper authorities of the city of Charlotte, erect and establish other fire hydrants and furnish thereat all water necessary for fire, sanitary and other public purposes. And for such additional hydrants as the city of Charlotte may order erected, the same annual rental shall be paid as for the forty hydrants herein stipulated for, to-wit, fifty dollars each per annum.

6. That if the said contractors shall fail at any time after the said waterworks are completed, to furnish an adequate supply of water for all fire, sanitary and other public purposes, as herein stipulated, excepting by reason of accidents or injury to machinery and making necessary repairs, no rent shall be paid by the city of Charlotte during the time of such failure. And if they shall, at any time, for a period of three months, continuously fail to give an adequate supply of water for all purposes herein enumerated, then this contract shall cease and be at an end.

7. That they guarantee at all times to furnish, if required, one hundred gallons of water *per day* of twenty-four hours, for each inhabitant of the city of Charlotte, and a sufficient force or pressure to throw from any five of said fire hydrants at one and the same time through one-inch nozzles and fifty feet of two-and-a half inch hose, five streams of water to the height of seventy-five feet."

In May, 1887, a new Board of Aldermen came into office, and the usual committees were appointed John H. McAden being appointed chairman of the Committee on Waterworks. The duties of these several committees were prescribed in chapter 9, section 54 of the published ordinances, as follows: "The Mayor shall appoint from the Board of Aldermen the following standing committees for the preparing and consideration of business for the action of the board, to whom may be referred such business as the board may deem appropriate."

In May, 1887, McAden notified Fleming, President of the Waterworks Company, that he must comply with his contract, or that rents would cease; that he must bring his works up to the requirements of the contract, and so as to throw water on fires. (Printed rec., bot. p. 15).

McAden did not expect of Fleming that he should furnish pressure as provided.in section 7, and did not make his demand in terms of that section. He asked a proper supply and service of water in time of fires, and the notice was that he must comply with his contract. (Printed rec., bot. p. 17). Fleming claimed that he could throw streams provided in seventh section, and at Fleming's suggestion tests were made to see, and it was ascertained that the company could not on some of the mains. After this notice, given by McAden in May, the city paid the rent for the quarter, embracing the month of May, and ending 1st July.

The city continued to use the water all during the time, for which it now refuses to pay

The following issues were submitted:

1. Did the Waterworks Company, during the period from July 1st, 1887, to January 1st, 1888, furnish the city of Charlotte, at all times, an adequate supply of water for all fire, sanitary and other public purposes, as required by the contract (except for accidents and repairs)?

2. If not, during what portion and for how much of said time did such failure continue?

3. What is due and owing from defendant to plaintiffs during said time?

4. Did plaintiffs purchase for value the account sued for at the time set out in complaint?

5. Did defendant, before July 1st, 1887, notify the Waterworks Company that they were required to bring their works to the standard of section 7, as to the quantity of water and pressure therein prescribed, and at what time such demand was made?

6. Did the Waterworks Company, at any time after completion of its plant and before account assigned to plaintiffs, and before notice, furnish the city with the amount of water and pressure provided for in section 7 of the contract?

7. What damage did defendant sustain by reason of such failure?

8. What damages has defendant sustained by such failure from time demand made to comply with section 7 to assignment and notice to city?

There was much other testimony not necessary to be here set out.

On the fifth issue, the Court charged the jury the burden was on defendant, and told them that if the jury should find that Dr. McAden, as chairman of the Committee on Waterworks, and acting under the resolution of the board, described in his evidence, approached Major Fleming, as president and manager of Waterworks Company, and notified him he must make his works comply with the contract—both parties talking at the time of the pressure (in section 7, contract); or if Dr. McAden, while such chairman of waterworks committee, so approached Major Fleming, as president and manager of Waterworks Company, and made the demand in the language as given by him, and made the report of his demand to the Board of Aldermen, and same was approved by them—this would be a demand of company that they were expected to comply with section 7, and answer to issue should be, Yes.

Plaintiffs excepted.

The charges and exceptions are not essential to be given.

There was a verdict for defendant on the issues, and a motion by plaintiffs for new trial, which was refused.

Plaintiffs appealed.

*Messrs. Jones & Tillett* (by brief), for plaintiffs.

*Messrs. G. F. Bason* and *Burwell & Walker* (by brief), for defendant.

SHEPHERD, J.: We are of the opinion that the seventh paragraph of the contract was not operative until the performance of its stipulations was, upon proper notice, expressly required by the defendant. We are also of the opinion that the charge of the Court upon the question of such notice was erroneous, and that the exceptions of the plaintiffs in that respect should be sustained. The provision in question was construed when this case was before us on a former occasion (108 N. C., 121), and it was then held that its performance was not a condition precedent to the payment of rent, but was the subject of an independent covenant, for a breach of which the defendant would be entitled to recover damages. It is but just, therefore, that the notice to put in operation so important a part of the contract, imposing, as it does, so serious a liability, should have been clear and explicit. The seventh paragraph provides that the water company shall " at all times furnish, *if required*, one hundred gallons of water per day of twenty-four hours, for each inhabitant of the city of Charlotte, and a sufficient force or pressure to throw from any five of said fire hydrants, at one and the same time, through one-inch nozzles and fifty feet of two-and-a-half-inch hose, five streams of water to the height of seventy-five feet."

It was in evidence that for a long period the water company had failed to furnish an adequate supply of water, etc., under the general provisions of the contract, and it is insisted that the notice given by Dr. McAden (the only witness of the defendant upon this subject) had reference to these alone. It is needless to repeat here the entire testimony of the witness, except to remark that he stated that the notice given by him was that the water company should " bring its water up to the requirements of the contract, and so as to throw water on fires." He says nothing about requiring the enforcement of section 7, as to the one hundred gallons of water per day and the additional pressure. On the contrary, the

witness said: "I did not expect of Fleming (the superinten-
dent) that he should furnish pressure as provided in section
7, and did not make my demand in terms of that sec-
tion.   I asked a proper supply and service of water in time
of fire, and the notice was that he must comply with his
contract."   It is true that Fleming suggested a test of the
five streams as required by section 7, but this surely was
no direct evidence of an express demand for the performance
of such independent covenant, when the witness McAden
himself says that he did not expect that such part of the
contract should be performed.   We doubt very much whether
there was any sufficient evidence of such an explicit notice
as is required to put in operation the contingent provision
of the contract above mentioned.   However this may be
(there was no prayer for instruction upon this point), we
think that his Honor erred in not permitting the jury to
draw their own inferences from the testimony, instead of
charging them as he did.

As the case goes back for another trial, and may be pre-
sented in a new and different aspect, we think it best to refrain
from discussing the other questions presented in the record.
We will remark, however, that the provision as to the non-
payment of rent is a valid one, and that if the plaintiffs fail
to show a performance of the contract during the first three
months, they cannot recover for that period.   As to the suc-
ceeding three months, we are inclined to the opinion that
they are entitled to recover upon a *quantum meruit,* the special
contract having been determined, by reason of its own limi-
tation, at the end of the first three months.

New trial.